Good morning, your honors. Samuel F. DeLeach, he appearing for the appellant and plaintiff, Carol Brown. Your honor, we're beginning with the issue of the direct evidence of discriminatory animus. Direct evidence of discrimination is evidence that, if believed by the tier of facts that have been uttered, proves the existence of a fact, an issue without reference to, without inference or presumption. It is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor. That was the decision in Rojas, cited in our opening brief. The Supreme Court has also stated that, where a plaintiff adduces direct evidence of discrimination, a familiar burden-shifting test of McDonnell Douglas is not applicable. Plaintiff has direct evidence that Postmaster of the facility in Bellflower, to which plaintiff was transferred in July 2005, referred to her as half an employee. It was before she even arrived at the Bellflower post office. Counsel, can you, just before we get all the way into the substance of this, would you just outline procedurally what happened in this case? You filed your complaint, it was signed to Judge Morrow, and then when was the summary judgment? In October of 2009, we filed cross motions concerning discovery. At that time, Judge Morrow exercised a rule by which she swapped this case, a case she had with Judge Reel. Was the summary judgment motion pending at that time? It was about 20 days away from being decided. So the summary judgment was pending, and the case was then transferred to Judge Reel. Right. And then how many days after that did he issue his order? I think it was about 20 days. So 20 days after that, he issued the order. Did you have an oral argument on this? Yes, we did. We had an earlier hearing on the motions, cross motions on discovery, which he denied. He denied our motions and granted the defendant's. Okay. Okay. Jose Perez is a chief union steward, and he heard Postmaster make this comment about how an employee asked him, you know, excuse me, let me rephrase that, I'm confusing him with another. Mr. Perez, the chief steward, he asked Postmaster Puskis how many employees were going to transfer from Bellflower, and Mr. Puskis replied two or three and then added, or should I say one and a half or two and a half. When Mr. Perez asked Mr. Puskis what he meant, he said he understood that one of the employees transferring to Bellflower was an injured worker. He also stated he didn't want or need an employee like that on his staff. He had no need for someone like that at his post office. Again, before her arrival at the new post office, Jill Macias, another union steward, heard Mr. Puskis refer directly to the plaintiff as half an employee. He also heard Mr. Puskis and Carol's direct supervisor, Charles Quang, each at different times make repeated references to Carol as half an employee, after she had been working at the Bellflower post office. These statements on their face preclude summary judgment. In the EOC versus Boeing, the court said when the evidence is direct, we require very little evidence to survive the summary judgment in a discrimination case. The statements themselves are not acts of discrimination or retaliation, are they? That's just an indication of an animus. And then I thought you were pursuing an argument that there was clear, factual disputes over the questions of disability, of retaliation, of interference, whether she was qualified to be an employee. All of those are very fact-specific issues over which the parties had significant disagreement. I thought that was the main part of your argument. That is the main part of my argument, Your Honor. The threshold issue is, though, that there is direct evidence of discrimination. I think that colors everything that folks must have. Well, there's direct evidence, from what you're suggesting, of animus. But that's not necessarily a discriminatory action. The question is whether, in fact, there's a factual dispute over all of these individual factors of discrimination or retaliation. First of all, regarding disability, it applies to the reasonable accommodation cause of action, but you don't have to prove disability for retaliation or coercion. It's more than just a reasonable belief that you have that engage in protective activity as a reasonable accommodation and so forth. But let me address the issue of disability, because the plaintiff has established that there are genuine issues with regard to disability. The post office regarded the plaintiff as having had a disability and gave a reasonable accommodation for years at the Marina Del Rey facility. And is there a record of disability? Since being transferred to Bellflower under Postmaster Puskis and Supervisor Quang, they no longer regarded her as having a disability. And in the same breath, they said they provided her with reasonable accommodation. And then she came in with a multitude of work restrictions orally communicated. They determined that there was no work for her at all in any of the broad classifications of jobs at the post office. She testified to several impairments, including not only being unable to take baths because of the pain in her shoulders from the lateral tendinitis and the pain in both arms. After washing and folding clothes, her arms hurt for days. She gets little sleep because of the constant pain from her physical impairments. She has the following physical impairments. Impairments of bilateral carpal tunnel syndrome, which causes both her hands to go numb and hurt all day. Counsel, I think all this is in the brief, and I think that your general argument is that there were general issues of material fact that precluded some re-judgment here. Yes, Your Honor. If we were to agree with you, is there anything that would preclude you from making a motion to reconsider your discovery request, reconsider the discovery ruling? I'm sorry, I don't understand the question, Your Honor. If we were to agree with you and we were to send this case back, is there anything to preclude you from making a motion to reconsider the prior ruling on the discovery? Well, we're now beyond the discovery call. They would have to give us more time for discovery. You would have to ask, make a motion for that, right? Right. And I've asked that we respectfully get assigned a different judge on remand because in my brief experience with Judge Reel, he didn't seem to perceive anything from the plaintiff's perspective whatsoever. Well, are you claiming that he was biased, or are you claiming that he just didn't understand your position? He didn't take cognizance of it, Your Honor. I don't know what is in his mind, but he didn't give any, everything that I presented was wrong, everything that the defendant presented was right. He didn't see any issues of disputed fact, any genuine issues here. He didn't see any problem with the horrendous abusive tactics on the part of the other attorney that I hadn't seen since before the Discovery Act in California in 1984. Was this the same attorney who's arguing today? No, it's not. It's not the same attorney who's arguing today, Your Honor. All right. Thank you. But you took some pretty extraordinary steps as well. I mean, when they requested an IME, an independent medical examination, you fought that. I mean, that's fairly standard in a case of this sort, that they get an independent medical examination, you fought that. You fought various efforts at Discovery as well. Your Honor, I fought that because we didn't get timely reports that gave us opinions on which we could go forward. We were stuck with reports that we're going to only ask about opinions in reports. The reports didn't contain any opinions. So we asked that if these doctors are going to examine the plaintiff and not be able to testify, what's the point of having her go through that? That was the only reason we opposed her exam. Certainly they're entitled to have exams if they have experts that are properly designated to give reports. So it's just a timing issue for you. It was not necessarily that you opposed an IME. It was just a timing issue. Exactly, Your Honor. Have you appeared before JTRIL before? I have not, Your Honor. All right. You want to reserve the rest of your time? Yes, Your Honor. Thank you. Can I just ask one question? Oh, sorry. Your third claim, the interference claim under 503 of ADA, do you have any law to suggest that that's incorporated within the Rehabilitation Act? Your Honor, I addressed that in the other sections of 503 that have been adopted in the Rehabilitation Act, but in particular this interference. Yes, Your Honor. In my portion and intimidation. Yeah. I indicated there's a private right of action that's been filed in several cases under 2203 of the ADA. And 2203 of the ADA, the standards of that statute have been applied to the Rehabilitation Act in 29 U.S.C. 791G. I mean, the other follow-up question to that is Judge Rehl never mentioned that? It was never mentioned in the motion for summary judgment from the government? It all of a sudden just disappeared. Did he mention that in argument? Or did you talk about that in your argument on summary judgment? Or has it just become an afterthought? Your Honor, I wasn't present for the argument. It's in trial, so I can't answer that question. Although we do have the transcript, I believe. But I have cited Coon v. Secretary of the U.S. Department of the Treasury in the Ninth Circuit case, Brown v. City of Tucson in the Ninth Circuit case, Solomon v. Vilsack in the D.C. Circuit case, Burgos v. Napolitano, Eleventh Circuit case, Regional Economic Community Action Programming v. City of Middleton, a Second Circuit case, Perry v. U.S. Department of State, a District Court case in the District of Columbia, etc. All of these cases hold that it's either incorporated or the standards are to be applied to the Rehabilitation Act. Thank you. Good morning, Your Honors, and may it please the Court. Assisting United States Attorney Jessica Chea on behalf of the Postal Service. The Postal Service was entitled to judgment as a matter of law for two primary reasons. First, even assuming Ms. Brown was disabled under the Rehabilitation Act and therefore entitled to an accommodation, the Postal Service engaged in repeated good-faith efforts to accommodate her steadily growing list of claimed medical restrictions and physical limitations. Second, Ms. Brown was not a qualified individual under the Rehabilitation Act, as her restrictions became so limiting that they effectively precluded her from being able to perform even her limitations. Is that a question of fact? Whether she was qualified? Your Honor. The extent of her disabilities? Whether or not she was qualified. It is a question of fact, but it is not material to the extent that she was provided with a number of accommodations. Isn't that also a question that's in dispute, whether the accommodations were sufficient to accommodate her in her work? Wasn't that also a factual question in dispute? In her affidavit, Ms. Brown raises a number of points that purport to raise a triable issue of fact. However, a number of those points are contradicted by her deposition testimony and her second limit. How can it be that she does so well in the first post office, and then in 2005 she goes to Bellflower, and immediately she is in conflict, and by 2006 she's filed her first EEOC complaint? Your Honor, while Ms. Brown was at the marina station prior to her arrival in Bellflower, she was in the computerized forwarding system unit of the marina office as a markup clerk. This is one of the few places in the Postal Service where you can find eight hours of sit-down work available. The majority of the positions within the Postal Service are inherently very physical, particularly the window clerk customer service position for which she applied. It was her choice to join the Bellflower office when the marina station was closing. There were only two positions available. Both were for window clerk positions. But I thought that she applied. She then had a doctor's certificate indicating that she could stand for an hour and then sit for an hour and stand for an hour and sit for an hour with a 10-pound limitation. And she essentially applied for that particular position, which you gave her with that understanding that, in fact, there would be those kinds of limitations based upon doctor's orders, and that apparently was fine for a short period of time. Is that not right? I'm sorry, Your Honor. I'm not sure. I thought that she actually took that job at the window clerk's position for a period of time until, according to her, the post office no longer accommodated the doctor's instructions. She did accept that position, Your Honor, and from the outset the Postal Service complied with her medical restrictions. They authorized her to sit or stand at one-hour intervals, consistent with the physical limitations that her doctor prescribed. But weren't they supposed to provide her with a particular chair? There's disputed testimony as to whether or not they provided her with that chair. It is undisputed that she was provided with a chair, which Ms. Brown refers to as a stool, within the first few months of her arrival at Bellflower. This was a raised stool for her to use exclusively while performing window work. The window has an elevated counter, and she was provided with that stool so she could sit or stand as needed. And she concedes that in her deposition. In 2007, she wrote a letter to the post office, apparently, suggesting that these are the kinds of jobs which she felt she could do given her physical limitations. And she has made a big point in her brief that the post office never responded,  that was just essentially forgotten. Is that correct? It is correct that she wrote a letter, Your Honor, but it is also correct that she presented the post office. Upon her return from her second extended medical leave of absence in January 2007, she presented her employers with a number of new restrictions that were not part of her original medical limitations when she first joined the Bellflower post office in 2005. These restrictions were onerous to the extent that she was not allowed to stand for more than one hour cumulatively within an eight-hour workday. When she provided the list of activities that she purported that she could do are actually the same activities that she complained of in her second amended complaint. Part of those duties were processing money orders and second notices for certified mail. She contended in her second amended complaint that when they had her do this, it aggravated not only her carpal tunnel syndrome, but she was forced to work the window for two hours at a time. And, of course, the restriction was not that she could not work the window for more than one hour at a time. The restriction was that she could not stand for more. Right. But the complaint I think Judge Sessions was addressing, which is the same concern I have, is that she presented a letter and that the Rehabilitation Act requires the employer to enter an interactive process to respond to that. And there's no evidence that the post office gave any response to her letter of what she said she could do and how they could work together so that she could perform those jobs. Your Honor, I think the evidence of the interactive process is in the fact that after her arrival in Bellflower, her new restrictions were taken into consideration. No, but what was the response to the 2007 letter? I don't believe there was a response in writing. That's the complaint. Your Honor, but I do know that she was not only taken off window work and provided desk work in which she could do some of the activities that she claimed she could do in her letter. She was also nominated for consideration in the District Reasonable Accommodation Commission and ultimately offered a limited duty position in Santa Ana. And I think that evidences the fact that the Postal Service was consistently endeavoring to meet her medical restrictions. Did you move for summary judgment on the interference, coercion, and intimidation claim? To the extent that that claim, well, it's the Postal Service's position that that's not a cognizable claim under the Rehabilitation Act. Did you move to dismiss it as not a cognizable claim? I don't believe that it was addressed in the summary judgment. I think for no other reason we would have to send that back. It would have to be addressed. Well, to the extent that One way or the other. I mean, if it did state a claim, then you'd have to dismiss it. Your Honor, to the extent that the facts giving rise to the interference and coercion claim are identical to those giving rise to the reasonable accommodation claim and Ms. Brown's retaliation claim, even if it were a cognizable cause of action, I don't think that that on its own would preclude summary judgment. Well, but you wouldn't be asking the Court of Appeals to grant summary judgment when, in fact, the lower court didn't even address the issue in the first place. You'd have to remand it back to Judge Reel to address the question, wouldn't you? Well, Your Honor, I was not the attorney who handled the case below. However, to the extent that the facts are identical, and Judge Reel made a specific finding that Ms. Brown not only was not qualified under the Rehabilitation Act, but also that she was reasonably accommodated on multiple occasions. Actually, your office prepared these findings of fact and conclusions of law? Yes, Your Honor. And they did not mention that interference and coercion and intimidation claim either? Right, Your Honor. The point I was making is that to the extent that Judge Reel found her to be reasonably accommodated, there was essentially nothing left in the complaint. The same actions of the Postal Service that give rise to Ms. Brown's reasonable accommodation, disability discrimination claims are identical to those that give rise to her interference and coercion claims. I mean, you said that Judge Reel found that she was not disabled. I mean, I find that fairly extraordinary. And you've argued that she wasn't disabled when, in fact, for 19 years, she was in a post office position treated as a disabled person and given accommodations under the law. And yet, for some reason, Judge Reel decided that she wasn't disabled, and you argued that she wasn't disabled, and you had treated her for 19 years totally differently. Actually, Your Honor, Judge Reel found that there was a question of fact as to whether or not she was disabled. Oh, I didn't understand. If there was a question of fact, then how could he grant summary judgment? He granted summary judgment because even if she was disabled and qualified and therefore entitled to an accommodation, she was reasonably accommodated on numerous occasions. She was provided with three chairs. She was provided with a back brace. She was offered a number of modified and limited-duty assignments consistent with her physical restrictions. The Postal Service was not obligated to give her the specific accommodations she requested or desired. It was only obligated to give her a reasonable accommodation. Similarly, it was not obligated to create an entirely new position for her once it was determined that she could not perform even her limited-duty assignments. Your Honor, so under – based on the record, because Ms. Brown's dissatisfaction with each of the accommodations she was provided cannot form the basis of liability under the Rehab Act, summary judgment should be affirmed on those grounds. If the Court has no further questions, I would like to move on. What's your position on the reassignment to a different judge? I do not feel that there was any evidence of bias in the record, and Judge Rehl made fairly specific findings of facts and conclusions of law. I don't think – I don't see that reassignment would be warranted. I thought his order was about two pages long, but he then adopted whatever you proposed. There were, but he did modify our proposed findings somewhat. Not really. Not really. And they were well written. Thank you, Your Honor. I'd like to respond to two points, if I might. There's a question of fact as to whether or not Carol Brown came up with new restrictions in January of 2007. And there's a question of fact as to whether the Post Office relied on them. They claim this is a communication made orally by the plaintiff. They never asked for medical information, and they always ask for medical information. And they claim they relied on this, yet they didn't do anything about it until May when they decided to give her a new job offer and move her. And as good as she was performing in her job, they didn't like that, and they decided to change things. And these are questions of fact. There was a motion to dismiss. I think I mentioned it in my opening brief. It was denied by the Court, Judge Morrow. So – and this has not been raised on appeal. And the facts that you rely on to show retaliation? Yes, Your Honor. Not merely speculation, but retaliation. Retaliation not under Title VII, Your Honor, but under 791G, under the ADA's 2212203, A and B. Those are the – that's the retaliation. Retaliation for requesting reasonable accommodation, for requesting what she has a right to request under the Rehabilitation Act. Well, one of the basis of the arguments, obviously, is response to EEOC complaints. She filed six complaints. You didn't put those as part of the record. The first one, I think, there's some access to, and you refer to some – to number six in part of your pleadings. But you don't – as a part of the record, it may be helpful to have submitted those EEOC complaints. Thank you, Your Honor. I'll remember that in the future. I thought that they would have been detailed in the first – in the first amended complaint. But when we went through our exhaustion, we decided to describe each one. You summarized them, but you don't actually include them in the record. I see, Your Honor. Okay. Thank you, Your Honor. I have – I have an issue I'd like for you to have an opportunity to talk about on the coercion and intimidation claim. You treat that as a freestanding separate claim as distinguished from the way your adversary argues that it's all incorporated in the retaliation and so on. Now, I gather it's clear from the record, and as far as I know, it's the case that the defendant did not move for summary judgment as to that claim. But the district court, in its judgment, adjudicated the whole case by adjudicating everything that was in the complaint. Now, that puts the issue before us, does it not, as opposed to the assertion that he never ruled on, because he entered a final judgment as to the whole case. And he has to be either right on that judgment, terminating the whole case, or we would have to reverse it. And so that issue, I'm concerned, is clearly before us. And if it isn't before us, then we do not have a judgment, a final judgment, on all claims and all parties, and we should dismiss the case. So I want you to respond to that concern that I have. See? Do you follow me, first of all? I'm entirely sure I follow you, Your Honor, but let me respond and see if I do. All right. Please ask if I don't. The court, it seems to me, cannot rule on a motion that hasn't been filed. There was no motion addressed to that cause of action whatsoever. There's a series of cases I identified earlier in my argument that show that there is a separate cause of action for coercion. The court took it upon itself, even though I said in my opposition there's been no presentation of this issue, to make a ruling on it anyway. And that ruling is erroneous, because there are disputed issues of fact with respect to the coercion, intimidation, and interference claim. It's a retaliation type of case, and I can identify some facts that the court wishes to meet. But my concern is, you're not asking us to remand so the court can rule on it. The court has, do you agree, the court has ruled on it. Whether it ruled correctly is another issue. But this case in the district court is totally terminated. I see, Your Honor. On all claims. I agree. The court did rule on it. All right? I agree that the court did. And you say it can't. You say it can't do it correctly, that is, rule on an issue that was never raised. And all I hear you saying then, and I understand you, is you're saying the court erroneously ruled on it. You're not saying the court didn't rule on it. Correct. All right. Thank you, Your Honor. All right. Can I answer any other questions? All right. The case of Brown v. Potter will be submitted and this court will adjourn the session for today.  Thank you, Your Honor.
judges: Sessions, Leavy, Wardlaw